ACCEPTED
06-15-00021-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/6/2015 12:19:10 PM
DEBBIE AUTREY
CLERK

CASE NO. 06-15-00021-CV

IN THE COURT OF APPEALS
SIXTH APPELLATE DISTRICT
STATE OF TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

8/6/2015 12:19:10 PM

DEBBIE AUTREY
Clerk

_____

SIDNEY B. HALE, JR.
Defendant – Appellant


v.


CITY OF BONHAM
Plaintiff - Appellee

_____


On Appeal from the 336th Judicial District Court
Fannin County, Texas
Cause No. CV-14-41722

_____


APPELLEE'S BRIEF

_____

Respectfully submitted,
CHRIS KILGORE
State Bar No. 11398350
ckilgore@kmlawpllc.com
DOTTIE SHEFFIELD
State Bar No. 24051326
dsheffield@kmlawpllc.com
JOHN J. REENAN
State Bar No. 00789777
jreenan@kmlawpllc.com
KILGORE MCCOWN, PLLC
2201 Main Street, Suite 212
Dallas, Texas 75201
(214) 296-4850
(972) 532-6496 (facsimile)

**ORAL ARGUMENT
REQUESTED**

**ATTORNEYS FOR
APPELLEE, CITY OF BONHAM**

i

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, the City of Bonham certifies that the following is a complete list of all parties to this litigation, the addresses of all trial and appellate counsel, and a list of the trial judge presiding at the time of the filing of this brief:

| | |
|---|---|
| Appellant: | Sidney B. Hale, Jr. |
| Trial/Appellant's Counsel: | Gary Linn Evans<br>George Andrew Coats<br>Carrie M. McKerley<br>Coats & Evans, P.C.<br>P.O. Box 130246<br>The Woodlands, Texas 77393-0246<br>Telephone: 281-367-7732<br>Facsimile: 281-367-8003<br>evans@texasaviationlaw.com<br>coats@texasaviationlaw.com |
| Appellee: | City of Bonham |
| Trial/Appellee's Counsel: | CHRIS KILGORE<br>State Bar No. 11398350<br>ckilgore@kmlawpllc.com<br>DOTTIE SHEFFIELD<br>State Bar No. 24051326<br>dsheffield@kmlawpllc.com<br>JOHN J. REENAN<br>State Bar No. 00789777<br>jreenan@kmlawpllc.com<br>KILGORE MCCOWN, PLLC<br>2201 Main Street, Suite 212<br>Dallas, Texas 75201<br>(214) 296-4850<br>(972) 532-6496 (facsimile) |

Trial Court Judge:              The Honorable Laurine Blake, 336th Judicial District Court, Fannin County, Texas

## STATEMENT REGARDING ORAL ARGUMENT

Appellee City of Bonham respectfully maintains that oral argument is warranted under Rules 39.1 and 39.7 of the Texas Rules of Appellate Procedure. Appellee City of Bonham urges that oral argument would aid the decisional process of the Court.

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL…………………………….. ii

STATEMENT REGARDING ORAL ARGUMENT……………………. iv

TABLE OF CONTENTS…………………………………………………. v

INDEX OF AUTHORITIES …………………………………………… viii

STATEMENT OF THE CASE ………………………………………… xv

APPELLEE'S RESPONSE TO ISSUES PRESENTED ……………….. xviii

RECORD ON APPEAL ………………………………………………. xix

STATEMENT OF FACTS ……………………………………………. 1

SUMMARY OF THE ARGUMENT..………………………………… 4

ARGUMENTS AND AUTHORITIES…………………………………… 7

STANDARD OF REVIEW……………………………………………… 7

   I.     THE CITY OF BONHAM WAS ACTING IN ITS
         GOVERNMENTAL FUNCTION FOR WHICH THE CITY'S
         GOVERNMENTAL IMMUNITY BARS HALE'S TORT
         CLAIMS…………………………………………………….. 8

   II.    THE PROPRIETARY-GOVERNMENTAL DICHOTOMY DOES
         NOT APPLY TO HALE'S BREACH OF CONTRACT AND
         QUASI-CONTRACTUAL CLAIMS …………………………... 17

         A.    The Texas Supreme Court Has Never Stated that the
                Dichotomy Applies to Waivers of Immunity
                From Contractual Claims, But Defers to the Legislature to
                Waive Immunity……………………………………… 18

B.      Cases Cited by Hale to Support His Position on Dichotomy Are Not Instructive to Make This Determination …………………………………………    20

C.      The Majority of the Courts of Appeals Hold the Dichotomy is Inapplicable to Contractual Claims……….    23

D.      Regardless, the City of Bonham Was Acting in a Governmental Manner………………………………..    24

III.     THE CITY'S GOVERNMENTAL IMMUNITY HAS NOT BEEN WAIVED FOR HALE'S CONTRACTUAL AND QUASI-CONTRACTUAL CLAIMS UNDER CHAPTER 271 …………………………………………..    25

A.      There Is No Waiver Under Chapter 271 for the Lease of the Hangar………………………………..    26

B.      There Is No Waiver of Governmental Immunity for Hale's Quasi-Contractual Claim of Bailment……………    27

C.      There Is No Waiver of Governmental Immunity for Hale's Quasi-Contract Claims of Promissory Estoppel and Unjust Enrichment………………………    28

IV.     TEXAS TORT CLAIMS ACT APPLIES TO BAR HALE'S TORT CLAIMS AS NO WAIVER APPLIES……………………………………………….    29

V.      HALE HAS NOT PLEAD A TORT CLAIM THAT MEETS *ANY* LIMITED WAIVER UNDER THE TEXAS TORT CLAIMS ACT……………………………………………    30

VI.     NO ADDITIONAL FACTUAL EVIDENCE WOULD RESULT IN A REVERSAL OF THE DECISION BY THE TRIAL JUDGE………………………………………………….    33

CONCLUSION AND PRAYER……………………………………..    36

CERTIFICATE OF SERVICE………………………………………    37

CERTIFICATE OF COMPLIANCE ……………………………………… 38

APPENDIX…………………………………………………………… 39

APP TAB A-Texas Tort Claims Act- Complete Copy ……………………. 40

APP TAB B-Texas Local Government Code –Applicable Sections…………. 41

**Page(s)**

**CASES**

*Bailey v. City of Austin*,
972 S.W.2d 180 (Tex. App.—Austin 1998, pet. denied)………..................20

*Ben-Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political
Subdivisions Prop./Cas. Joint Self-Ins. Fund*,
212 S.W.3d 320 (Tex. 2006)…………………………………….......7, 26

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000)…………………………………………………7

*Carr v. Brasher*,
776 S.W.2d 567 (Tex. 1989)…………………………………………………..7

*Casso v. City of McAllen*,
No.13-08-00618-CV, 2009 WL 781863 (Tex. App.—
Corpus Christi March 26, 2009, pet. granted)(mem. op.)……………...22, 23

*City of Corsicana v. Wren*,
317 S.W.2d 516 (Tex. 1958)…………………………………………...10, 14

*City of Dallas v. Reata Constr. Corp.*,
83 S.W.3d 392 (Tex. App.—Dallas 2002) rev'd.
*Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371
(Tex. 2006) …………………………………………………………..17

*City of Dallas v. Turley*,
316 S.W. 3d 762 (Tex. App.—Dallas 2010, pet. denied) ………………...26

*City of Deer Park v. Ibarra*,
No. 01-10-00490-CV, 2011 WL 3820798 (Tex. App.—Houston
[1st Dist.] 2011, no pet.)(mem.op.)………………………………………..29

*City of El Paso v. High Ridge Constr., Inc.*,
442 S.W.3d 660 (Tex. App.—El Paso 2014, pet. filed)……………………..24

*City of Galveston v. Posnainsky*,
    62 Tex. 118 (1884)…………………………………………...........13, 16

*City of Galveston v. State*,
    217 S.W.3d 466 (Tex. 2007)………………………………………….8, 19

*City of Georgetown v. Lower Colo. River Auth.*,
    413 S.W.3d 803 (Tex. App.—Austin 2013, pet. dism'd by agr.)………….22

*City of Gladewater v. Pike*,
    724 S.W.2d 514 (Tex. 1987)……………………..………………......20

*City of Houston v. Petroleum Traders Corp.*,
    261 S.W.3d 350 (Tex. App.—Houston [14th Dist.]
    2008, no pet.)……………………………………………………….15, 29

*City of Paris v. Abbott*,
    360 S.W.3d 567 (Tex. App. –Texarkana 2011, pet. denied)…………......27

*City of Plano v. Homoky*,
    294 S.W.3d 809 (Tex. App. – Dallas 2009, no pet.)…………......13, 14, 16

*City of San Antonio v. Polanco & Co., L.L.C.*,
    No. 04-07-00258-CV, 2007 WL 3171360
    (Tex. App.—San Antonio Oct 31, 2007, pet. denied)(mem. op.)……........14

*City of San Antonio v. Wheelabrator Air Pollution Control, Inc.*,
    381 S.W.3d 597 (Tex. App.—San Antonio 2012,
    pet. denied)…………………………………………......18, 20, 23, 25, 26

*City of Texarkana v. City of New Boston*,
    141 S.W.3d 778 (Tex. App.—Texarkana 2004, pet. denied)........8, 9, 10, 11

*City of Texas City v. Suarez*,
    No. 01-12-00848-CV, 2013 WL 867428 (Tex. App.—
    Houston [1st Dist.] Mar. 7, 2013)(mem. op.)……………….....…....…12

*City of Tyler v. Likes*,
    962 S.W.2d 489, 503 (Tex. 1997)…………………………………......11

*County of Cameron v. Brown,*
 80 S.W.3d 549 (Tex. 2002)…………………………..…………………….32

*Dilley v. City of Houston,*
 222 S.W.2d 992 (Tex. 1949)…………………………..………………………..10

*Ethio Express Shuttle Serv., Inc. v. City of Houston,*
 164 S.W.3d 751 (Tex. App.—Houston [14th Dist] 2005, no pet.)…….........15

*FM Props. Operating Co. v. City of Austin,*
 22 S.W.3d 868 (Tex. 2000)……………………………………..........7, 34

*Fed. Sign v. Tex. S. Univ.,*
 951 S.W.2d 401 (Tex. 1997)……………………………………………….9, 23

*Gates v. City of Dallas,*
 704 S.W.2d 737 (Tex. 1986)……………………………..……………….21

*Gay v. City of Wichita Falls,*
 457 S.W.3d 499 (Tex. App.—El Paso, 2014, no pet.)……....4, 8, 17, 19, 24

*Gen. Servs. Comm'n v. Little-Tex Insulation Co.,*
 39 S.W.3d 591 (Tex. 2001)………………………………………..……9, 25

*Guillory v. Port of Houston Auth.,*
 845 S.W.2d 812 (Tex. 1993)………………………………..………………28

*H & H Sand & Gravel, Inc. v. City of Corpus Christi,*
 No. 13-06-00677-CV, 2007 WL 3293628,
 (Tex. App.—Corpus Christi 2007, pet. denied)(mem. op.)………………29

*Jack Boles Servs., Inc. v. Stavely,*
 906 S.W.2d 185 (Tex. App.--Austin 1995, writ denied)…………............28

*Joe v. Two Thirty Nine J. V.,*
 145 S.W.3d 150, 162 (Tex. 2004)…………………….……………….34

*Kirby Lake Dev. Ltd. v. Clear Lake City Water,*
 320 S.W.3d 829 (Tex. 2010)………………….…………8, 19, 25, 27, 28

*Lower Colo. River Auth. v. City of Boerne,*
 422 S.W.3d 60 (Tex. App.—San Antonio 2014)
 (pet. dism'd by agr.)……………………………….……………..18, 23, 27

*Lubbock Cnty. Water Control and Improvement Distr. v.*
 *Church & Akin, L.L.C.,*
 442 S.W.3d 297 (Tex. 2014)…………………………..………....27

*McKinney v. City of Gainesville,*
 814 S.W.2d 862 (Tex. App. - Fort Worth 1991, no writ)………………...32

*Medrano v. City of Pearsall,*
 989 S.W.2d 141 (Tex. App.—San Antonio 1999, no pet.)……………....32

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
 253 S.W.3d 653 (Tex. 2011)……………………………………….…..35

*Mitchell v. City of Dallas*,
 855 S.W.2d 741, 744 (Tex. App.—Dallas 1993), *aff'd*,
 870 S.W.2d 21 (Tex. 1994)……………………….………..14, 16, 17

*Poncar v. City of Mission,*
 797 S.W.2d 236 (Tex. App.—Corpus Christi 1990, no writ)…………...32

*Republic Power Partners, L.P. v. City of Lubbock*,
 424 S.W.3d 184 (Tex. App.—Amarillo 2014, no pet.)……….….…...18, 24

*Star-Telegram, Inc. v. Doe,*
 915 S.W.2d 471 (Tex. 1995)……………………….………….……7, 34

*State Dept. of Highways and Public Transp. v. Kitchen*,
 867 S.W.2d 784 (Tex. 1993)…………………………………..........35

*State Farm Fire & Cas. Co. v. S.S. & G.W.*,
 858 S.W.2d 374 (Tex. 1993)……………………………………....7

*Suarez v. City of Texas City*, 2015 WL 3802865 (Tex. June 19, 2015)………....13

*Temple v. City of Houston*,
 189 S.W.3d 816 (Tex. App. –Houston [1st Dist.] 2006, no pet.)………....23

*Tex. Dep't of Transp. v. Jones*,
   8 S.W.3d 636 (Tex. 1999)……………………………….…..…...............9

*Tex. Dep't of Transp. v. Ramirez,*
   74 S.W.3d 864 (Tex. 2002)……………………………..…..………....31

*Tex. Mut. Ins. Co. v. Ruttiger*,
   381 S.W.3d 430 (Tex. 2012)………………………………........…4, 8, 19

*Tex. Natural Res. Conservation Comm'n v. IT-Davy*,
   74 S.W.3d 849 (Tex. 2002)……………………….…….…..…….9, 19

*Tex. River Barges v. City of San Antonio*,
   21 S.W.3d 347 (Tex. App.—San Antonio 2000,
   pet. denied)……………………………………………...............13, 16, 17, 35

*Tooke v. City of Mexia*,
   197 S.W.3d 325 (Tex. 2006)……4, 9, 10, 11, 18, 19, 20, 21, 22, 23, 25, 29

*Traveler's Ins. Co. v. Joachim*,
   315 S.W.3d 860 (Tex. 2010)……………………………………....7

*Travis Cnty. v. Pelzel & Assoc.*,
   77 S.W.3d 246 (Tex. 2002)………………………….……….......28

*Univ. of Tex. Med. Branch v. York*,
   871 S.W.2d 175 (Tex. 1994)…………………….……….......9

*Vanderford v. City of Houston*,
   286 S.W. 568 (Tex. App. – Galveston 1926, no writ)……………….....10

*West Texas Mun. Power Agency v. Republic Power Partners, L.P.*,
   428 S.W.3d 299 (Tex. App.—Amarillo 2014, pet. ref'd)………......18, 19, 24

*Wasson Interests, Ltd. Interests, Ltd. v. City of Jacksonville,*
   No. 12-13-00262-CV, 2014 WL 3368413
   (Tex. App.—Tyler July 9, 2014, pet filed)(mem. op.)……...8, 17, 18, 19, 24

*Wichita Falls State Hosp. v. Taylor*,
106 S.W.3d 692 (Tex. 2003)…………………………..5, 8, 9, 19, 21, 25

**STATUTES**

TEX. CIV. PRAC. & REM. CODE ANN. §101.101(West 2011)…………....xvi, 1

TEX. CIV. PRAC. & REM. CODE ANN. §101.021(West 2011)…….5, 30, 32, 33

TEX. CIV. PRAC. & REM. CODE ANN. §101.021(1)(A),(B)(2)
(West 2011)…………………………………………………………….30

TEX. CIV. PRAC. & REM. CODE ANN. §101.021(2)
(West 2011)……………………………………………………...31, 32, 34, 35

TEX. CIV. PRAC. & REM. CODE ANN. §101.025 (Vernon 2005)……….….31

TEX. CIV. PRAC. & REM. CODE ANN. §101.025(a)(Vernon 2005)………...31

TEX. CIV. PRAC. & REM. CODE ANN. §101.057(2)(West 2011)……………35

TEX. CIV. PRAC. & REM. CODE ANN. §101.0215 (West 2011)…………11, 14

TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)
(West 2011) …………………………………………….……5, 11, 15, 16, 31

TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(10)…6, 12, 14, 15, 24, 31

TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(b) (West 2011)………12, 31

TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(c) (West 2011)……6, 12, 31

TEX. LOC. GOV'T CODE ANN. CHAPTER 271 (West 2005)….6, 19, 25, 26, 27

TEX. LOC. GOV'T CODE ANN. §271.151 (West 2005)………………………27

TEX. LOC. GOV'T CODE ANN. §271.151(2) (West 2005)…………….……6, 26

TEX. LOC. GOV'T CODE ANN. §271.152 (West 2005)……………..6, 26, 28, 29

TEX. GOV'T CODE ANN. §311.034 (West Supp. 2010)………………...9, 19, 25

**CONSTITUTIONAL PROVISIONS**

TEX. CONST. art. XI, §13……………………………………...………...11

TEX. CONST. art. XI, §13(a)…………………………………….……...11

**OTHER AUTHORITIES**

Christopher D. Jones, Comment, Texas Municipal Liability:
*An Examination of the State and Federal Causes of Action,*
40 BAYLOR L.REV. 595, 615 (1988)……………………………..………….15

## STATEMENT OF THE CASE

*Nature of the Case:*

This case arises out of property damages sought by Sidney B. Hale, Jr. (Appellant or Hale) as a result of the collapse of the roof of a hangar at Jones Field Municipal Airport due to a severe ice storm. Hale leased the hangar from the City of Bonham (Appellee or "the City" or "City of Bonham") who owns, operates, and maintains the Airport. (C.R. 17-22). Hale made a claim against the City for damage to his tools and equipment that were contained in the hangar when the roof of the hangar collapsed. (C.R. 42-47).

On May 9, 2014, the City filed a Petition for Declaratory Judgment asking the court to declare that the lease agreement between the City and Hale adopted the 2012 Airport Rules and Regulations and by its terms, Hale had no claim against the City as a result of the accident. (C.R. 7-22). On June 12, 2014, the City filed a First Amended Petition for Declaratory Judgment asking the Court to declare that the lease agreement entered into between Hale and the City for the lease of a hangar adopted the 2012 Airport Rules and Regulations; that based on the terms of the 2012 Airport Rules and Regulations, Hale had no claim against the City; and the City is immune from suit under the concept of sovereign immunity. (C.R. 24-47). On June 4, 2014, Hale sent the City his formal Notice of Claim letter pursuant to the

requirement of section 101.101 of the Texas Tort Claims Act. (C.R. 42-43). On July 9, 2014, Hale filed his Verified Answer and Request for Disclosure. (C.R. 51-56).

On November 12, 2014, Hale filed his Original Counterclaim against the City, making a claim *solely* for property damage to his tools and equipment that were contained in the hangar out of which Hale conducted an aircraft repair/maintenance business. (C.R. 57-67). Hale alleged causes of action against the City for negligence, premises defect, breach of contract, unjust enrichment, violations of the Deceptive Trade Practices Act, gross negligence, and bailment. (C.R. 57-67).

## *Course of Proceedings:*

On November 25, 2014, the City of Bonham, a governmental unit of the State of Texas, filed a Partial Motion for Summary Judgment as to Hale's tort claims filed against it which must be brought under the Texas Tort Claims Act ("TTCA") or the tort claims will be precluded by the doctrine of sovereign immunity unless the immunity is waived. (C.R. 68-99). Hale did not plead a tort claim that met the waiver of the TTCA. (C.R. 57-67). Hale responded that the City is a governmental unit and the condition of the roof of the hanger constituted a premises defect for which the City knew or should have known of the danger. Hale alleged that no exception to the waiver of immunity barred the tort claims and notice was provided as required by the Texas Tort Claims Act. (C.R. 107-118). On January 6, 2015, the district

court conducted a hearing, with the Honorable Laurine Blake presiding. (1 R.R. 1-25).

On January 16, 2015, the City filed a Motion for Summary Judgment as to Hale's breach of contract and contract-related claims filed against it which are precluded by governmental immunity unless that immunity is waived. (C.R. 120-169). Under the facts of this case, governmental immunity was not waived. (C.R. 120-169). On February 5, 2015, Hale responded that the City, as a governmental unit, was engaged in a proprietary function so governmental immunity did not apply to Hale's claims for breach of contract and bailment. (C.R. 172-181). The City replied to Hale's response. (C.R. 182-187). Hale surreplied to the City's reply. (C.R. 189-191). On February 12, 2015, the district court conducted a hearing, with the Honorable Laurine Blake presiding. (2 R.R. 1-28).

### *Trial Court Disposition:*

Judge Laurine Blake granted the City's Motion for Partial Summary Judgment and the Order was signed on January 6, 2015. (C.R. 119).

Judge Laurine Blake granted the City's Motion for Summary Judgment and the Order was signed on February 12, 2015. (C.R. 192).

The City filed its Motion for Dismissal on February 17, 2015. (C.R. 193-195). The district court signed the Order of Dismissal on February 27, 2015. (C.R. 197).

Hale filed his Notice of Appeal on March 26, 2015. (C.R. 200-201).

## APPELLEE'S RESPONSE TO ISSUES PRESENTED

I.      The trial court correctly granted the City's Motion for Partial Summary Judgment as governmental immunity bars Hale's tort claims brought against the City arising out of its governmental functions.

II.      The trial court correctly granted the City's Motion for Summary Judgment as governmental immunity bars Hale's contractual and quasi-contractual claims against the City. The proprietary-governmental dichotomy does not apply to Hale's contractual and quasi-contractual claims. Regardless, the City was acting in its governmental function when it leased a hangar to the Hale at the Airport it owns, operates and maintains.

III.      The City's governmental immunity has not been waived for Hale's contractual and quasi-contractual claims under Chapter 271.

IV.      The Texas Tort Claims act applies to Hale's tort claims as Airport is listed as a governmental function under the Act.

V.      Hale has not plead a tort claim that meets any limited wavier under the Texas Tort Claims Act.

VI.      There are no additional facts that would result in a reversal of the decision by the trial judge.

# RECORD ON APPEAL

The record of this appeal consists of a one-volume Clerk's Record, and a two-volume Reporter's Record. The Clerk's Record will be cited in this Brief as "C.R. [page]." The first volume of the Reporter's Record is a transcript of trial-court proceedings on January 6, 2015, and will be cited in this Brief as "1 R.R. [page]." The second volume of the Reporter's Record is a transcript of trial court proceedings on February 12, 2015, and will be cited in this Brief as "2 R.R. [page]."

Hale's brief will be cited as "Appellant Brf. [page]."

Materials forming Appendix to this Brief will be cited as "App. Tab [letter]."

## STATEMENT OF FACTS

The City owns and operates Jones Field Municipal Airport (the "Airport"), located in Bonham, Texas. (C.R. 17-22). The Airport is open to the aviation public. (C.R. 17). Any aircraft with current and correct FAA Certificates of Registration and Airworthiness are authorized to use the Airport. (C.R. 18). The operation of the Airport includes, but is not limited to, aircraft repairs, maintenance, and storing of aircraft in its hangars. (2 R.R. 21-22).

On or about June 18, 1984, Hale entered into a lease agreement with the City to lease one of the hangars located at the Airport ("the Lease"). (C.R. 12-13). On or about December 6, 2013, (Hale refers to the date of the ice storm as December 8, 2013), a severe ice storm hit the area, causing widespread damage. The roof of the hangar that Hale leased from the City collapsed as a result of the ice storm (the "Accident"). (C.R. 8). Hale made a claim against the City *solely* for property damage to his tools and equipment that were contained in the hangar when the roof collapsed. (C.R. 42-47).

On or about May 9, 2014, the City filed a Declaratory Judgment requesting the Court declare that the lease the City entered into with Hale adopted the 2012 Airport Rules and Regulations. (C.R. 7-22). On June 4, 2014, Hale sent the City his formal Notice of Claim letter pursuant to the requirement of section 101.101 of the Texas Tort Claims Act. (C.R. 42-43). On June 12, 2014, the City filed its First

1

Amended Petition for Declaratory Judgment asking that the Court declare that the lease adopted the 2012 Airport Rules and Regulations; that the Court declare that by the terms of the Airport Rules and Regulations, Hale has no claim against the City; and the Court declare that the City is immune from suit under the concept of sovereign immunity. (C.R. 24-47).

On or about November 12, 2014, Hale filed his counterclaims against the City. (C.R. 57-67). Hale alleges the City was negligent for failing to maintain the premises in a safe condition; that the condition of the roof of the hanger constituted a premises defect, alleging that the hangar had not been inspected for defects; a breach of contract claim arising out of the City's alleged refusal to keep the hangar in a safe condition; damages for unjust enrichment; violations of the Deceptive Trade Practices Act; gross negligence for failing to maintain the premises and the condition of the hangar which posed an unreasonable risk of harm to its occupants; and bailment for the City requesting Hale vacate the premises when the roof collapsed due to the ice storm. (C.R. 57-67).

Contrary to the facts, as represented by Hale, Hale did not inform the City of the observed and alleged deteriorating condition of the hangar prior to the incident nor was there any evidence that had a center section of the structure been supplemented, the hangar would not have collapsed as Hale alleges. (C.R. 182 and 1 R.R. 11). There was no evidence that the apex bolts that held the top seam of the

roof of the hangar were corroded and undersized, as Hale alleges. (1 R.R. 11). However, these facts are germane to the City's sovereign immunity issue. (C.R. 182). The hangar collapsed due to the severe ice storm. (C.R. 2). After the incident, the City immediately provided Hale with another hangar, for which he received free rent for three months and continues to date to lease this hangar from the City. (C.R. 182 and 2 R.R. 7).

## SUMMARY OF THE ARGUMENT

The court below correctly decided the City of Bonham's Partial Motion for Summary Judgment and Motion for Summary Judgment. The City has governmental immunity from suit for the tort, contractual and quasi-contractual claims alleged by Hale against the City. Further, there are no additional facts that would result in a reversal of the decision by the trial Judge. Accordingly, the City of Bonham respectfully requests that this Court affirm the trial court's Orders on the City of Bonham's Partial Motion for Summary Judgment and Motion for Summary Judgment.

Governmental immunity protects municipalities such as the City of Bonham from lawsuits for damages unless immunity has been clearly and unambiguously waived by the Legislature. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). As the Supreme Court has stated, there is a "'heavy presumption' in favor of immunity," and only "unambiguous legislation" can waive immunity. *Tooke* at 331-32. Texas courts presume that the "Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." *Gay v. City of Wichita Falls*, 457 S.W.3d 499 at 507 (Tex. App.—El Paso, 2014, no pet.)(citing *Tex. Mutual Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 451 (Tex. 2012)). "Any ambiguity should be resolved in favor of

retaining immunity." *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692 at 696 (Tex. 2003).

Under section 101.021 of the Texas Tort Claims Act ("TTCA"), a sovereign immunity is waived for only two types of claims: (1) those involving property damage, personal injury or death arising from the operation or use of a motor-driven vehicle or motor-driven equipment; and (2) those involving personal injury or death caused by a condition or use of tangible personal property or real property. TEX. CIV. PRAC. & REM. CODE ANN. §101.021. Hale has not alleged property damage arising from the operation or use of a motor-driven vehicle or motor-driven equipment, so the first category does not apply. Hale also has not alleged personal injury or death, so the second category does not apply. Therefore, Hale has not pled a tort claim that meets the limited waiver under the TTCA.

While the TTCA does not apply to the liability of a municipality for damages arising from its proprietary functions, which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality," it expressly excludes those governmental activities listed in section 101.0215(a) from those activities that may be considered proprietary. TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a). If a function is included in this non-exclusive list of governmental functions under the TTCA, it has been deemed governmental in nature by the Legislature and the court has no discretion or authority to hold otherwise.

TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(c). Airports are included in the TTCA's non-exclusive list of governmental functions. TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(10).

The trial court properly granted summary judgment as to Hale's contractual and quasi-contractual claims against the City as well, since the City enjoys governmental immunity from suit and this immunity has not been waived. Chapter 271 of the Local Government Code has set forth the sole means for waiving a municipality's immunity from suit in a contract-related claim. TEX. LOC. GOV'T CODE ANN. §271.152 (West 2005). However, such a waiver does not apply to this case. The waiver in that chapter applies only to contracts providing goods or services to a city. *Id*. §271.151(2). The lease agreement at issue does not involve goods or services. Therefore, the waiver under Chapter 271 does not apply.

## ARGUMENTS AND AUTHORITIES

## STANDARD OF REVIEW

The trial court did not identify the grounds on which it granted partial summary judgment and summary judgment. (C.R. 119 and C.R. 192). "When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872-73 (Tex. 2000)(citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)). Hale bears the burden to negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 380 (Tex. 1993). If it fails to negate each ground on which the judgment may have been rendered, this Court must affirm summary judgment. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). Because Hale has not met this burden, this Court should affirm the trial court's judgments.

Subject matter jurisdiction is essential to a court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). The absence of subject matter jurisdiction may be raised in a motion for summary judgment. *Id.* at 554. Because governmental immunity defeats a trial court's jurisdiction, a de novo review is required. *Traveler's Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political*

7

*Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006)(stating "whether a trial court has jurisdiction is a question of law subject to de novo review.").

There is a "'heavy presumption' in favor of immunity," and only "unambiguous legislation" can waive immunity. *Gay*, 457 S.W.3d at 504 (citing *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007)); *Wasson Interests,* 2014 WL 3368413 *6 (Tex. App.-Tyler July 9, 2014, pet. filed(mem. op.)(citing *Kirby Lake Dev. Ltd. v. Clear Lake City Water*, 320 S.W.3d 829, 837 (Tex. 2010)). Texas courts presume that the "Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." *Gay*, 457 S.W.3d at 507 (citing *Tex. Mutual Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 451 (Tex. 2012)). "Any ambiguity should be resolved in favor of retaining immunity." *Wichita Falls State Hosp.*, 106 S.W.3d at 696.

## I. THE CITY OF BONHAM WAS ACTING IN ITS GOVERNMENTAL FUNCTION FOR WHICH THE CITY'S GOVERNMENTAL IMMUNITY BARS HALE'S TORT CLAIMS

It is well-established in Texas that sovereign or governmental immunity protects the State, its agencies, and its officials from lawsuits for damages, absent the Legislature's consent through statute or legislative resolution. Sovereign immunity protects governmental entities from lawsuits for money damages. *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 783 (Tex. App.—Texarkana

8

2004, pet. denied)(citing *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002)); *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001); *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex. 1997). Political subdivisions of the state, including cities, are entitled to governmental immunity unless it has been waived. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). In Texas, governmental immunity encompasses immunity from suit, which bars a suit unless the governmental entity has consented, and immunity from liability, which protects the entity from judgments even if it has consented to the suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Tooke,* 197 S.W.3d at 332.

The courts have uniformly held that "it is the Legislature's sole province to waive or abrogate sovereign immunity" and that any waiver must be expressed clearly and unambiguously. *City of Texarkana*, 141 S.W.3d at 781; *IT-Davy*, 74 S.W.3d at 853-54 (quoting *Fed. Sign*, 951 S.W.3d at 409); *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex. 1994); see TEX. GOV'T CODE ANN. §311.034 (West Supp. 2010)(stating that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language"). Further, courts generally resolve any statutory ambiguities related to a waiver of immunity in favor or retaining immunity. *Wichita Falls State Hosp.,* 106 S.W.3d at 695.

9

Hale contends that the trial court erred in granting the City's Partial Motion for Summary Judgment because immunity does not apply to suits arising from the performance of a proprietary function. (Appellant Brf. 3). While the doctrine of governmental immunity protects municipalities from being sued in tort for matters arising from the performance of their governmental functions (except as authorized by the Texas Tort Claims Act), no such protection exists for municipalities performing their proprietary functions. *City of Texarkana*, 141 S.W.3d at 781. "Generally speaking, a municipality's proprietary functions are those conducted 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government,' while its governmental functions are 'in the performance of purely governmental matters solely for the public benefit." *Tooke,* 197 S.W.3d at 343 (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)).

From very early on, Texas courts found it difficult to consistently draw the proprietary-governmental distinction. *Vanderford v. City of Houston*, 286 S.W. 568, 570 (Tex. App.—Galveston 1926, no writ)(holding that the maintenance of public parks by municipal corporations is a governmental function of the municipality); *City of Corsicana v. Wren*, 317 S.W.2d 516, 518 (Tex. 1958)(maintenance and operation of the airport, including the rental of space for the storage of aircraft and the burning of weeds, constitutes a governmental function). That changed in 1987

10

when the Texas Constitution was amended to give the Legislature the authority to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." TEX. CONST. art. XI, §13(a); *Tooke,* 197 S.W.3d at 343 (quoting TEX. CONST. art. XI, §13); *see also City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997). The Legislature immediately exercised that authority through the Texas Tort Claims Act ("TTCA"), reclassifying many functions that had previously been classified as proprietary functions as governmental. TEX. CIV. PRAC. & REM. CODE ANN. §101.0215; see also *City of Texarkana,* 141 S.W.3d at 783 (noting that waterworks and a number of other municipal functions were considered proprietary under the common law, but were reclassified as governmental through section 101.0215 of the TTCA). The Legislature has described governmental functions as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a).

The Legislature has statutorily recognized a non-exclusive list of thirty-six municipal functions, describing them as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty," "including, among others, "*airports, including when used for space flight activities*

11

…" TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(10). App. Tab. A. Hale himself admitted to the trial court below, "all activities related to the City of Bonham's operation of the airport are considered governmental." (C.R. 112).

The Legislature also defined proprietary functions as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality," and the statute sets forth a non-exclusive list of three proprietary functions. *Id.* §101.0215(b). The Legislature specified that the "proprietary functions of a municipality do not include those governmental activities listed under subsection (a)." *Id.* §101.0215(c).

The City owns and operates the Airport, located in Bonham, Texas. (C.R. 17-22). The Airport is open to the aviation public. (C.R. 17). Any aircraft with current and correct FAA Certificates of Registration and Airworthiness are authorized to use this public Airport. (C.R. 18). The operation of the Airport includes, but is not limited to, aircraft repairs, maintenance, and storing of aircraft in its hangars. (2 R.R. 21-22). The operation of an airport would encompass the leasing, maintenance, and inspection of its hangars. (2 R.R. 21-22). Accordingly, *this Court has no discretion to determine that a municipality's action is proprietary since it has been designated as a governmental function by the Texas Tort Claims Act.* TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(10); *City of Texas City v. Suarez*, No. 01-12-00848-CV, 2013 WL 867428 (Tex. App.—Houston [1ˢᵗ Dist.] Mar. 7, 2013)

12

aff'd, *Suarez v. City of Texas City*, 2015 WL 3802865 (Tex. June 19, 2015); *City of Plano v. Homoky*, 294 S.W.3d 809, 814 (Tex. App.—Dallas 2009, no pet.); *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 357 (Tex. App.—San Antonio 2000, pet. denied)(explaining that the city's removal of a barge company from a marina is included in the governmental function of operating a marina and park even if the removal was motivated by the desire to protect the city's profits).

Hale's tort claims are based on the City's alleged failure to maintain and inspect the hangar that Hale leased from the City, which ultimately collapsed when a severe ice storm hit the area causing damage to Hale's property contained in the hangar. Hale conclusory asserts that "the City voluntarily engaged in the business of owning and leasing real estate in and around the Airport and this real estate aspect of the City is not a necessary component to the operation of the Airport and is not a function mandated by the State, but rather a separate and distinct endeavor and, thus, is purely and completely a proprietary function." (Appellant Brf. 8). To support his argument that the function of owning and leasing "real estate" at the Airport is a proprietary function and not arising from the City's governmental function of operating an airport, Hale relies on *City of Galveston v. Posnainsky*, 62 Tex. 118 (1884). *Posnainsky* is not applicable, as it was decided on common law principles involving whether maintenance of a sidewalk was governmental or proprietary, and was resolved prior to the Legislature enacting the laundry list of governmental and

proprietary functions in section 101.0215 of the TTCA. However, even under common law, the maintenance and operation of an airport, including the rental of space for the storage of aircraft and burning of weeds, constitute a governmental function. *Wren*, 317 S.W.2d at 521.

Hale argues, "all that's required to operate an airport is a runway." (2 R.R. 22). *Such a restrictive interpretation is contrary to the legislature's intent which specifically lists airports as a governmental activity under § 101.0215(a)(10) of the Texas Tort Claims Act.* TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(10).

Hale attempts to recharacterize certain operations at the Airport into a proprietary function by calling it "real estate" aspect of the City that is not a component to the operation of the Airport. (Appellant Brf. 8). In determining whether a City was engaged in governmental or proprietary function, a plaintiff may not "split various aspects of a City's operation into discrete functions and recharacterize certain of those functions as proprietary." *Homoky,* 294 S.W.3d at 814-15("Given the broad interpretations afforded 'parks' and 'recreational facilities,' and notwithstanding the lack of pleasure or amusement some associate with golf, we conclude operation of a golf course is encompassed within the governmental functions listed in the TTCA");(citing *City of San Antonio v. Polanco & Co., L.L.C.,* No. 04-07-00258-CV, 2007 WL 3171360, at *4 (Tex. App.—San Antonio Oct 31, 2007, pet. denied)(mem. op.); and *Mitchell v. City of Dallas*, 855

14

S.W.2d 741, 744 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994)(refusing to adopt a restrictive interpretation of section 101.0215(a) and concluding that the reclassification of parks as a governmental function includes all actions taken related to public parks)); *see* Christopher D. Jones, Comment, *Texas Municipal Liability*: *An Examination of the State and Federal Causes of Action*, 40 BAYLOR L.REV. 595, 615 (1988)("In regard to mixed functions, the rule now seems to be that if any one component of a function is governmental, the entire function will be considered governmental . . .."). Therefore, the leasing and maintenance of hangers at the City's Airport relate to "Airports" which is a governmental function listed under section 101.215(a)(10) of the TTCA.

Likewise, courts have held that "governmental functions encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute." *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2008, no pet.)(purchasing fuel was necessary to perform governmental functions such as police and fire protection, garbage collection and operation of emergency ambulance services); *Ethio Express Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 756-57 (Tex. App.—Houston [14th Dist] 2005, no pet.)(shuttle service to airport was closely related to Houston's regulation of airport). Accordingly, all activities associated with the operation of an airport, including the maintenance and leasing of the hangars at the Airport, are

15

interrelated and are governmental functions. Also, Hale's statement that the leasing of the hangars is "intended for the private exchange and benefit of its inhabitants," is completely false. (Appellant Brf. 10). The Airport is open to the aviation public. (C.R. 17). Any aircraft with current and correct FAA Certificates of Registration and Airworthiness are authorized to use the Airport. (C.R. 18). The rental of the Airport hangers is therefore intended for and benefits the aviation public who have an aircraft with the required FAA certificates. (C.R. 17-18).

Hale also argues that the Court in *Posnainsky* held that because the municipality constructed and maintained the streets for its "own advantage or emolument," it was not immune from suit for negligently maintaining those streets. (Appellant Brf. 10). Unlike common law under which *Posnainsky* was decided, the City's motives for engaging in the activity of leasing and maintaining its hangars are irrelevant under the Texas Tort Claims Act. *Homoky,* 294 S.W.3d at 814; *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, at 357; *Mitchell,* 855 S.W.2d at 744.

What is ironic is that in Hale's response to the City's Partial Motion for Summary Judgment as to Hale's tort claims against the City, Hale agrees that all activities related to the City of Bonham's operation at the airport are considered governmental. (C.R. 112). Hale even states in his response that, "many courts have held that all activities associated with the operation of one of the governmental functions listed in section 101.0215(a) are governmental and cannot be considered

16

proprietary, regardless of the City's motive for engaging in the activity." (C.R. 111). 0-12). Hale also states, "Consequently, all activities related to the City of Bonham's operation of the airport are considered governmental." (C.R. 112). Hale cites to the following cases to support his argument: *citing* to *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, at 356-57(Tex. App.—San Antonio 2000, pet denied); *City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392, 395 (Tex. App.—Dallas 2002, pet.); *Mitchell v. City of Dallas*, 855 S.W.2d 741, 744 (Tex. App.—Dallas 1993 aff'd 870 S.W.2d 21 (Tex. 1994). (C.R. 111-12).

Thus, the City's function of leasing and maintaining its hangars, which is encompassed in the operation of an Airport, is a governmental function. Accordingly, this Court has no discretion to determine the City's action is proprietary because it has been designated as a governmental function by the Texas Tort Claims Act.

## II. THE PROPRIETARY-GOVERNMENTAL DICHOTOMY DOES NOT APPLY TO HALE'S BREACH OF CONTRACT AND QUASI-CONTRACTUAL CLAIMS

The propriety-governmental function dichotomy present in the Texas Tort Claims Act should not be applied to breach of contract claims against governmental entities. *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 504 (Tex. App.—El Paso, 2014, no pet.); *Wasson Interests, Ltd. Interests, Ltd. v. City of Jacksonville,* No. 12-13-00262-CV, 2014 WL 3368413, at *9 (Tex. App.—Tyler July 9, 2014, pet.

17

filed)(mem. op.); *City of San Antonio v. Wheelabrator Air Pollution Control, Inc.,* 381 S.W.3d 597, 604 (Tex. App.—San Antonio 2012, pet. denied); *Lower Colo. River Auth. v. City of Boerne,* 422 S.W.3d 60, 67 (Tex. App.—San Antonio 2014)(pet. dism'd by agr.); *Republic Power Partners, L.P. v. City of Lubbock*, 424 S.W.3d 184, 193 (Tex. App.—Amarillo 2014, no pet.); *West Texas Mun. Power Agency v. Republic Power Partners, L.P.*, 428 S.W.3d 299, 306 (Tex. App.—Amarillo 2014, no pet.).

## A. The Texas Supreme Court Has Never Stated the Dichotomy Applies to Waivers of Immunity from Contractual Claims, but Defers to the Legislature to Waive Immunity

In *Tooke*, the Texas Supreme Court noted that it had never determined whether the proprietary/governmental dichotomy is applicable to waivers of governmental immunity for breach-of-contract claims. *Tooke,* 197 S.W.3d at 343. In *Tooke*, the Supreme Court correctly observed: "we have never held that this same distinction [proprietary/governmental] determines whether immunity from suit is waived for breach of contract claims, and we need not determine that issue here." *Tooke,* 197 S.W.3d at 343; *see also Wasson Interests*, 2014 3368413 at *4-5. Reasoning that it was not the Court's place to create a situation where immunity from suit would not apply, the Supreme Court further explained that is has "consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function." *Tooke,*

197 S.W.3d at 332; *see also Gay*, 457 S.W.3d at 505 (citing *Tooke*, 197 S.W.3d at 332); *West Texas Mun. Power*, 428 S.W.3d at 305-06 (citing TEX. LOC. GOV'T CODE ANN. §311.034); *IT-Davy*, 74 S.W.3d at 853-54. Explaining why deference to the Legislature is the proper approach, the Court said "in the contract-claims context, legislative control over sovereign immunity allows the Legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public." *Id.* (quoting *IT-Davy*, 74 S.W.3d at 854).

As the Supreme Court has stated, there is a "'heavy presumption' in favor of immunity," and only "unambiguous legislation" can waive immunity. *Gay*, 457 S.W.3d at 504 (citing *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007)); *Wasson Interests*, 2014 WL 3368413 *6 (citing *Kirby Lake Dev. Ltd. v. Clear Lake City Water*, 320 S.W.3d 829, 837 (Tex. 2010)). Texas courts presume that the "Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." *Gay*, 457 S.W.3d at 507 (citing *Tex. Mutual Ins. Co.,* 381 S.W.3d at 451). "Any ambiguity should be resolved in favor of retaining immunity." *Wichita Falls State Hosp.*, 106 S.W.3d at 696. Because the proprietary-governmental distinction was created for the uniqueness of the tort setting, that is where it should remain.

Because the Legislature has not clearly and unambiguously waived the City's immunity for contract claims in any other manner than as indicated in Chapter 271

of the Local Government Code, we urge this Court to hold that the proprietary/governmental dichotomy does not apply to Hale's contract and quasi-contract claims and affirm the trial court's Order granting the City's Motion for Summary Judgment.

### B. Cases Cited by Hale to Support His Position on Dichotomy Are Not Instructive to Make This Determination

Before *Tooke*, some cases were decided with the presumption that governmental immunity does not apply to cities in a contract-related setting. *See Bailey v. City of Austin*, 972 S.W.2d 180, 192 (Tex. App.—Austin 1998, pet. denied)(citing *City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex. 1987)). *Tooke* made it clear that sovereign immunity is the default rule for municipalities with respect to all types of claims. *Tooke*, 197 S.W.3d at 331-32 (sovereign immunity in the absence of a clear legislative waiver is the firmly established principle); *see also Wheelabrator Air Pollution Control, Inc.,* 381 S.W.3d at 604 (sovereign immunity is "default rule" after *Tooke).*

Accordingly, due to the reversal from presumption against immunity to the presumption in favor of immunity, cases decided before *Tooke* on the issue of proprietary-governmental distinction and any presumption against immunity are of little precedential value.

To encourage this Court to import the proprietary-governmental distinction to contract-related claims, Hale cites to cases that are of no value in making this

determination. Hale cites to *Gates v. City of Dallas*, 704 S.W.2d 737 (Tex. 1986) to support his contention that the proprietary-governmental distinction applies to contract-related claims. (Appellant Brf. 12). *Gates* was decided before *Tooke* and is of little precedential value due to the reversal from presumption against immunity to the presumption in favor of immunity. *Tooke*, 197 S.W.3d at 331-32. Additionally, Hale fails to note that *Gates* only addressed immunity from liability, not immunity from suit. *Gates*, 704 S.W.2d at 739. This distinction is critical because even if a government entity acknowledges liability, immunity from suit bars a remedy until the Legislature consents to suit. *Wichita Falls State Hosp.*, 106 S.W.3d at 692. In *Gates*, immunity from suit was neither raised nor addressed by the court; therefore, *Gates* has no value regarding the issue presented here-immunity from suit. *Gates*, 704 S.W.2d at 739. Also, Hale fails to reconcile *Gates* with the Supreme Court's unequivocal statement in *Tooke* that "we have *never* held that this same distinction [between proprietary and governmental functions] determines whether immunity from suit is waived for breach of contract claims." *Tooke*, 197 S.W.3d at 343. Unless the Supreme Court means something different than what it says in that it has not ruled on the applicability of the proprietary-governmental dichotomy to contract claims, *Gates* does not state the rule for that issue. Fully aware of *Gates*, the Supreme Court still made it clear that governmental immunity was the default rule. *Id.* at 332.

Hale urges this Court to adopt the holding in the *City of Georgetown v. Lower Colo. River Auth.,* 413 S.W.3d 803 (Tex. App.—Austin 2013, pet. dism'd by agr.), to find that the proprietary-governmental dichotomy applies to contract-related claims against a municipality. (Appellant Brf. 13). This Court should not be swayed by the *City of Georgetown.* The court in the *City of Georgetown* based its holding on pre-*Tooke* authority that the proprietary-governmental dichotomy applied to contract claims against the governmental entities under the common law. *Id.* at 810-11. The primary rationale offered by the Austin Court of Appeals for applying the dichotomy to contract claims is that it is what the lower courts have done in the past. *Id.* However, the court noted that the prior opinions "mostly assumed, without explanation" or "did not engage in substantive analysis." *Id.* Precedence based on unexplained reasons and formulated without analysis do not warrant unthinking obedience.

Hale also cites to a post-*Tooke* appellate opinion, *Casso v. City of McAllen*, No.13-08-00618-CV, 2009 WL 781863 (Tex. App.—Corpus Christi March 26, 2009, pet granted)(memo. op), that applied the proprietary-governmental distinction in a contract case to determine that a city did not have immunity. (Appellant Brf. 13). The *Casso* court failed to look to the Legislature to determine whether it had clearly and unambiguously waived immunity, as required by the Supreme Court. Specifically, the *Casso* court did not analyze the proprietary-governmental test in

light of a contract claim rather than a tort claim. *Casso*, 2009 WL 781863 at *4. Instead, it simply stated, without discussion, that immunity does not apply in cases arising from a contract related to a proprietary function. *Id*. at **5-7. In support of that principle, the *Casso* court cited *Tooke*, as well as *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997) and *Temple v. City of Houston*, 189 S.W.3d 816 (Tex. App.—Houston [1ˢᵗ Dist.] 2006, no pet.). *Tooke* expressly declined to rule on the applicability of the proprietary-governmental distinction in contract cases. *Tooke*, 197 S.W.3d at 343. Furthermore, *Federal Sign*, a pre-*Tooke* sovereign immunity case, held that the *state* is immune from suit in breach-of-contract cases (*Fed. Sign*, 951 S.W.2d at 408); and *Temple* pre-dates the Supreme Court's definitive pronouncement in *Tooke* that immunity is the default rule and waiver can only come from a clear statement by Legislature (*Temple*, 189 S.W.3d at 818).

Therefore, the cases cited by Hale are not instructive and this Court should not be swayed by their holdings.

## C. The Majority of the Courts of Appeals Hold the Dichotomy is Inapplicable to Contractual Claims

Additionally, contrary to Hale's statement that the majority of appellate courts continue to apply the proprietary-governmental dichotomy to contract claims, the reality is that the majority of the courts of appeals have concluded that the proprietary-governmental function dichotomy is inapplicable to breach-of-contract claims. *Wheelabrator Air Pollution Control, Inc.,* 381 S.W.3d at 604; *Lower Colo.*

23

*River Auth.,* 422 S.W.3d at 60; *Republic Power Partners, L.P. v. City of Lubbock,* 424 S.W.3d at 193; *West Texas Mun. Power Agency,* 428 S.W.3d at 306; *Wasson Interests,* 2014 WL 3368413 at *3; *Gay,* 457 S.W.3d at 506-07; *see also City of El Paso v. High Ridge Constr., Inc.,* 442 S.W.3d 660, 666-68 (Tex. App.—El Paso 2014, pet filed). These courts provide a thorough discussion of the authorities, policies, and reasons as to why the proprietary-governmental function dichotomy is inapplicable to breach-of-contract claims.

**D. Regardless, the City of Bonham Was Acting in a Governmental Manner**

Regardless, all activities related to the City of Bonham's operation of the airport, including the leasing of the hangars at the Airport, are considered governmental functions. The Legislature has statutorily recognized airports, including when used for space flight activities as a governmental function under the Texas Tort Claims Act. TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(10). The City owned, operated, and maintained the Airport. The operation of the Airport would encompass the leasing and maintenance of hangars located at the Airport. *See Id.,* subsection (a).

Accordingly, regardless of the proprietary-governmental dichotomy, the City was acting in its governmental capacity with relation to the leasing and maintenance of the hangar rented by Hale.

**III.  THE CITY'S GOVERNMENTAL IMMUNITY HAS NOT BEEN WAIVED FOR HALE'S CONTRACTUAL AND QUASI-CONTRACTUAL CLAIMS UNDER CHAPTER 271**

By entering into a contract, a governmental entity "necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of the agreement," and, therefore, waives its immunity from liability. *Tooke*, 197 S.W.3d at 332. However, the entity retains its immunity from suit on the contract unless that immunity has been specifically waived. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d at 594-597; *Kirby Lake Dev., v. Clear Lake City Water Auth.*, 320 S.W.3d at 836; *Wheelabrator Air Pollution Control,* 381 S.W.3d at 601. Express consent by the Legislature is required to abrogate immunity from suit in a breach of contract case. When the Legislature provides for a waiver of immunity from suit, it must do so with clear and unambiguous language, and any ambiguity must be resolved in favor of retaining immunity. TEX. LOC. GOV'T CODE ANN. §311.034 (Vernon Supp. 2007)("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of governmental immunity unless the waiver is effected by clear and unambiguous language."); *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 837; *Tooke*, 197 S.W.3d at 328-29; *Wichita Falls State Hosp.*, 106 S.W.3d at 697.

Through its enactment of Chapter 271 of the Texas Local Government Code, the Legislature has clearly and unambiguously waived a local government's

25

immunity from suit only in certain circumstances. *Wheelabrator Air Pollution Control,* 381 S.W.3d at 601; *Ben-Bolt-Palito Blanco,* 212 S.W.3d at 327. Claimant bears the burden to prove facts that demonstrate that governmental immunity has been waived and that the court has subject matter jurisdiction. *City of Dallas v. Turley*, 316 S.W. 3d 762, 767 (Tex. App.—Dallas 2010, pet. denied).

**A. There is No Waiver Under Chapter 271 for the Lease of the Hangar**

In order for Hale to have a valid breach of contract claim against the City of Bonham, the lease of the hangar must fall within the limited statutory definitions and wavier provisions of Subchapter I of Chapter 271 of the Texas Government Code. Specifically, section 271.152 of the Texas Government code provides as follows:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. §271.152 (West 2005).

A "contract subject to this subchapter" is defined as:

> "[A] written contract stating the essential terms of the agreement **for providing goods or services to the local governmental entity** that is properly executed on behalf of the local governmental entity. *Id*. §271.151(2).

*Id*. §271.151(2). App. Tab. B.

The City of Bonham did not waive immunity from suit by entering into the Lease with Hale. The written contract entered into between Hale and the City is for a lease of hangar located and situated at the City of Bonham's Airport. (C.R. 12-13).

26

The Lease does not require Hale "*to provide goods or services to the local government entity* (the City of Bonham)," therefore, governmental immunity has not been waived. Lease contracts, contracts for the sale of real estate, easement agreements are not contracts of "goods and services" and, therefore, the governmental entity retains immunity. *City of Paris v. Abbott*, 360 S.W.3d 567, 576 (Tex. App.—Texarkana 2011, pet. denied) (citing *Kirby Lake Dev., Ltd.,* 320 S.W.3d at 839); *see Lubbock Cnty. Water Control and Improvement Dist. v. Church & Akin*, 442 S.W.3d 297, 301 (Tex. 2014)(concluding that a lease agreement with a governmental unit does not waive immunity unless the agreement requires that the claimant provide goods or services to the governmental unit).

The Lease does not constitute a contract stating the essential terms of the agreement *for providing goods or services to the City of Bonham*; therefore, the limited waiver of immunity from suit under Chapter 271 does not apply. Further, the Legislature could have chosen to incorporate the proprietary-governmental dichotomy into the statutory waiver for breach of contract for goods and services, but it chose not to do so. *Lower Colo. River Auth.,* 422 S.W.3d 60, 66 (declining to apply proprietary-governmental distinction and indicating section 271.151 constitutes the sole waiver of immunity from suit in contract setting).

## B. There is No Waiver of Governmental Immunity for Hale's Quasi-Contractual Claim of Bailment

27

Hale alleges that his bailment claim lies in contract and, therefore, the proprietary-governmental dichotomy should be applied to this claim. Hale alleges that the City demanded that he vacate the premises and stay out of the hangar and that such action represents complete command and control over the premises.

For a bailment to occur, there must be an express or implied contract, delivery of the property to the bailee, and acceptance of the property by the bailee, and consideration must be present for a bailment to exist. *See Jack Boles Servs., Inc. v. Stavely,* 906 S.W.2d 185, 188 (Tex. App.--Austin 1995, writ denied). Hale's bailment claim against the City sounds in breach of contract and is, therefore, barred by governmental immunity. There is no statute which expressly waives governmental immunity for a claim of bailment. *Kirby Lake Dev., Ltd.,* 320 S.W.3d at 836. Thus, the City has immunity from suit for Hale's bailment claim.

**C.** **There is No Waiver of Governmental Immunity for Hale's Quasi-Contract Claims of Promissory Estoppel and Unjust Enrichment**

Hale has sued the City based on a quasi-contract claim of promissory estoppel and unjust enrichment. There is no waiver of governmental immunity for promissory estoppel and unjust enrichment claims. The law requires that any waiver of immunity be clear, unambiguous, and explicit. *Travis Cnty v. Pelzel & Assoc.*, 77 S.W.3d 246, 249 (Tex. 2002); *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex. 1993). The plain language of section 271.152's waiver of immunity does not clearly, unambiguously and explicitly include claims founded in equity,

28

such as promissory estoppel and unjust enrichment. Every case to construe this statute has so held. *City of Deer Park v. Ibarra*, No. 01-10-00490-CV, 2011 WL 3820798, *16-18 (Tex. App.—Houston [1st Dist.] 2011, no pet.)(mem. op.)(claims in equity of promissory estoppel and quantum meruit are not encompassed by §271.152's limited waiver); *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d at 359-60 (Section 271.152 waives sovereign immunity only for breach of contract and "lists no other claims, either in law or in equity"). *H & H Sand & Gravel, Inc. v. City of Corpus Christi*, No. 13-06-00677-CV, 2007 WL 3293628, *4 (Tex. App.—Corpus Christi 2007, pet. denied)(mem. op.)(holding that claims in equity are not encompassed by section 271.152's limited waiver). Hale does not plead or even suggests any statutory waiver of immunity for his quasi-contractual claims of promissory estoppel and unjust enrichment, much less being encompassed by section 271.152. For this reason, the City retains immunity for Hale's promissory estoppel and unjust enrichment claims.

## IV. TEXAS TORT CLAIMS ACT APPLIES TO BAR HALE'S TORT CLAIMS AS NO WAIVER APPLIES

Because the leasing and maintenance of the hangar at the Airport is a governmental function, the TTCA applies, effectively barring Hale's tort claims, unless immunity has been waived. *Tooke*, 197 S.W.3d at 344. Hale does not allege a waiver under the TTCA.

29

Governmental immunity is waived under section 101.021 of the TTCA for only two types of claims:

(1) Those involving property damage, personal injury or death proximately caused by the wrongful act or omission or negligence of an employee acting within his scope of employment if:

(A) The property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) The employee would be personally liable to the claimant according to Texas law; and

(2) Personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE §101.021(1)(A), (B)(2).

Hale has not alleged property damage arising from the operation or use of a motor-driven vehicle or motor-driven equipment so the first category does not apply. Hale has not alleged personal injury or death, so the second category does not apply. Accordingly, Hale's tort claims filed against the City are barred by governmental immunity as no waiver applies under the TTCA.

## V. HALE HAS NOT PLEAD A TORT CLAIM THAT MEETS *ANY* LIMITED WAIVER UNDER THE TEXAS TORT CLAIMS ACT.

The TTCA expressly excludes those governmental activities listed in section 101.0215(a) from those activities that may be considered proprietary. TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(b)(c). Accordingly, all activities associated with the operation of one of the governmental functions listed in section 101.0215(a) are governmental and cannot be considered proprietary. Because the leasing and maintenance of hangars at the Airport, falls within the non-exclusive list of thirty-six municipal functions designated as a governmental function, " airports, including when used for space flight activities …", this Court has no discretion to determine this service is proprietary. TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(10).

Hale appears to rely on section 101.025 of the TTCA to allege that the TTCA provides a limited waiver of immunity from suit for all claims for which it waives liability. TEX. CIV. PRAC. & REM. CODE ANN. §101.025. (Appellant Brf. 26). Hale alleges that liability for premises defects is implied under section 101.021(2) of the TTCA because a premises defect arises from a condition existing on real property. (Appellant Brf. 26). We agree with Hale that premises defect falls within Section 101.021(2) of the TTCA. However, the City's immunity from suit for tort claims is waived *only* to the extent the TTCA creates liability. *Texas Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 866 (Tex.2002)(citing Tex. Civ. Prac. & Rem.Code Ann. §101.025(a) (Vernon 2005)). Section 101.025 of the TTCA establishes the following

31

threshold premise: a governmental entity has sovereign immunity to suit and waives that immunity *only if* liability arises under the Act. *See generally, Poncar v. City of Mission,* 797 S.W.2d 236, 239 (Tex. App.—Corpus Christi 1990, no writ). Unless a claim for premise liability falls within one of *the specific areas of liability* for which immunity is waived by section 101.021 of the TTCA—(1) property damage, personal injury, or death arising from the operation or use of a motor-driven vehicle or other motor-driven equipment; and (2) personal injury and death so caused by a condition or use of tangible personal or real property (premises liability), the governmental entity is immune. *See Medrano v. City of Pearsall,* 989 S.W.2d 141, 144 (Tex. App.—San Antonio 1999, no pet.); *McKinney v. City of Gainesville,* 814 S.W.2d 862, 865 (Tex. App.—Fort Worth 1991, no writ). The Act provides that a governmental unit is liable for "***personal injury and death*** so caused by a condition or use of tangible personal or *real property* if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. §101.021(2) (Vernon 2005); *see County of Cameron v. Brown,* 80 S.W.3d 549 at 554 (Tex. 2002). However, Hale's claim is solely for *property damage not personal injury and death* caused by a condition of real property (premise liability); therefore there is no waiver of the City's governmental immunity for premise liability as it does not does not fall within one of the specific areas of

32

liability for which immunity is waived. Tex. Civ. Prac. & Rem. Code Ann. §101.021.

## VI. NO ADDITIONAL FACTUAL EVIDENCE WOULD RESULT IN A REVERSAL OF THE DECISION BY THE TRIAL JUDGE

There are no additional facts that would result in a reversal of the trial Judge's decision regarding the City's governmental immunity for the claims asserted by Hale. Hales alleges he needs additional time to give him the opportunity to amend his pleadings to bring any claims under the TTCA. (1 R.R. 23). Hale had plenty of time to conduct discovery but chose not to do so. The City filed its First Amended Declaratory Judgment on June 12, 2014, which included a request for the Court to declare the City was immune from suit under the concept of sovereign immunity. (C.R. 24-47). Hale filed his Original Counterclaims against the City on November 12, 2014. (C.R. 57-67). The City did not even file its Partial Motion for Summary Judgment as to Hale's tort claims filed against it until November 25, 2014. (C.R. 68-99). Hale filed his response to the City's Partial Motion for Summary Judgment on December 30, 2014. (C.R. 107-119). In his response, Hale never alleged he needed additional time to conduct discovery and in fact never even argued the proprietary-governmental dichotomy in his response. (C.R. 107-119). The hearing on the City's Partial Motion for Summary Judgment did not take place until January 6, 2015. (1 R.R. 1-25). At no time during this period of time did Hale propound any discovery requests to the City nor file a Motion for Continuance for additional time to conduct

33

discovery. It was not until the parties appeared for the hearing on January 6, 2015, that, for the first time, Hale requested additional time to conduct discovery, or alternatively or in addition to, Hale requested time to "give us an opportunity to amend our pleadings to bring our claims within the umbrella of the Texas Tort Claims Act." (1 R.R. 12-13). Since the trial court found granted the City's Motion for Partial Summary Judgment, but did not identify the grounds on which it granted the Motion (C.R. 119), the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872-73 (Tex. 2000)(citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)). No additional facts would change the evidence that the TTCA provides that the City is liable for "*personal injury and death* so caused by a condition or use of tangible personal or *real property*," and because Hale is alleging property damage and not personal injury and death, there would be additional facts that could possibly waive the City's immunity under the TTCA. Tex. Civ. Prac. & Rem. Code Ann. §101.021(2). *Joe v. Two Thirty Nine J. V.*, 145 S.W.3d 150, 162 (Tex. 2004)(Plaintiff's motion for continuance was denied because discovery sought was not material and would not raise fact issue).

Hale believes the facts of this case may support a claims for a special defect. (Appellant Brf. 32-33). Given that a special defect is an excavation, obstruction, or other condition that presents an unexpected and unusual danger to ordinary users of

roadways, it is highly unlikely any additional discovery would result in a claim for a special defect. *State Dept. of Highways and Public Transp. v. Kitchen*, 867. S.W.2d 784, 786 (Tex. 1993). However, like premise liability, Hale would still have to show that the City waived its immunity under the TTCA for the alleged special defect under TTCA section 101.021(2). Again, no additional evidence would change the fact that the City is liable for "*personal injury and death* so caused by a condition or use of tangible personal or *real property*," and because Hale is solely alleging property damage and not personal injury and death, there would be additional facts that could possibly waive the City's immunity under the TTCA. Tex. Civ. Prac. & Rem. Code Ann. §101.021(2).

Hale erroneously alleges that the City's actions may give rise to intentional tort claims, for which sovereign immunity does not attach and fails to cite to any statute or cases to support his argument. (Appellant Brf. 32). All tort theories alleged against a governmental unit are governed by the TTCA. *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 659 (Tex. 2011). Waivers of immunity under the TTCA do not extend to claims arising out of intentional torts. Tex. Civ. Prac. & Rem. Code Ann. §101.057(2) (West 2011) (This chapter does not apply to a claim arising out of assault, battery, false imprisonment, or any other intentional tort . .."); *Tex. River Barges*, 21 S.W.3d at 356 ("Under the Act, a municipality is immune for liability for intentional torts."). Consequently, any additional factual evidence that

may give rise to intentional tort claims against the City, although highly unlikely, would not be waived under the TTCA.

Therefore, this Court should deny Hale's request to remand the case to the trial court to allow Hale the opportunity to conduct additional discovery and amend his counterclaims as no additional factual evidence would result in a reversal of the decision by the trial Judge.

## CONCLUSION AND PRAYER

The Court below correctly decided the City of Bonham's Motion for Partial Motion for Summary Judgment and the City of Bonham's Motion for Summary Judgment. The City of Bonham has governmental immunity from liability and from suit on Hale's tort claims and the City of Bonham has governmental immunity from suit on Hale's contractual and quasi-contractual claims. Further, no additional factual evidence discovered by Hale would result in a reversal of the decisions by the trial Judge. Accordingly, the City of Bonham, prays the trial court's Orders on its Partial Motion for Summary Judgment and Motion for Summary Judgment be affirmed in all things and that appellate costs be taxed against Hale.

Respectfully submitted,

**KILGORE MCCOWN, PLLC**

/s/ Dottie Sheffield

_____
CHRIS KILGORE
State Bar No. 11398350
*ckilgore@kmlawpllc.com*
DOTTIE SHEFFIELD
State Bar No. 24051326
*dsheffield@kmlawpllc.com*
JOHN J. REENAN
State Bar No. 00789777
*jreenan@kmlawpllc.com*
2201 Main Street, Suite 212
Dallas, Texas 75201
214-296-4850
972-532-6496 – facsimile
**ATTORNEYS FOR**
**APPELLEE, CITY OF BONHAM**

## CERTIFICATE OF SERVICE

I certify that a copy of Appellee's, City of Bonham, brief was served electronically on Appellant, Sidney B. Hale, Jr., through his counsel of record, Gary Linn Evans, Coats & Evans, P.C., P.O. Box 130246, The Woodlands, Texas 77393-0246, via evans@texasaviationlaw.com on the 6th day of August, 2015.

/s/ Dottie Sheffield

_____
DOTTIE SHEFFIELD

# CERTIFICATE OF COMPLIANCE

As required by the Texas Rules of Appellate Procedure 9.4(i)(3), I certify that the Brief of Appellee, City of Bonham, contains 8,438 words, excluding the parts of the Brief that are exempted by the Texas Rules of Appellate Procedure 9.4(i)(1).

This brief complies with the typeface requirements of Texas Rules of Appellate Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times Roman font.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 6th day of August, 2015.

/s/ Dottie Sheffield

_____
CHRIS KILGORE
State Bar No. 11398350
*ckilgore@kmlawpllc.com*
DOTTIE SHEFFIELD
State Bar No. 24051326
*dsheffield@kmlawpllc.com*
JOHN J. REENAN
State Bar No. 00789777
*jreenan@kmlawpllc.com*
KILGORE MCCOWN, PLLC
2201 Main Street, Suite 212
Dallas, Texas 75201
(214) 296-4850
(972) 532-6496 (facsimile)
**ATTORNEYS FOR**
**APPELLEE CITY OF BONHAM**

# **APPENDIX**

**APP TAB A**       TEX. CIV. PRAC. & REM. CODE ANN.
§101.001-101.109……………………………………..40

**APP TAB B**       TEX. LOC. GOV'T CODE ANN. §271.151 and
(West 2005)……………………………………...41